IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONOVAN LUCAS, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>DAIICHI SANKYO COMPANY, INC.; and DOES 1 TO 50, inclusive,<br><br>    Defendants.<br>_____/ | No. C 11-0772 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE (Docket No. 10) |

Plaintiff Donovan Lucas filed the present class complaint in Alameda County Superior Court, alleging violations of California law governing overtime pay and rest and meal break periods. On February 18, 2011, Defendant Daiichi Sankyo, Inc. (DSI)[1] removed the lawsuit to federal court. Docket No. 1. DSI now moves to transfer the lawsuit from this District to the Central District of California, pursuant to 28 U.S.C. § 1404(a). Docket No. 10. Plaintiff opposes the motion. Having considered all of the parties' submissions, the Court GRANTS Defendant's motion.

---

[1] Defendant DSI has answered the suit, Docket No. 4, and has stated that Plaintiff incorrectly named Daiichi Sankyo Company, Inc., its Japanese parent company, as Defendant in his complaint, Def.'s Mot. to Transfer Venue at 1 n.1.

BACKGROUND

DSI is a pharmaceutical company which markets certain drugs and conducts research to develop new therapies. Lucas seeks to represent a class of "All persons who are employed or have been employed as 'Pharmaceutical Representatives' by defendants in the State of California and for at least four (4) years prior to the filing of this action." Compl. ¶ 21. Lucas alleges that "Pharmaceutical Representative" means all persons employed by Defendant whose title is or was "Sales Representative," "Senior Sales Representative," "Executive Sales Representative," or "Senior Executive Sales Representative." Compl. ¶ 2.

DSI employs representatives to inform physicians about its products and to convince them to write prescriptions for those products. DSI asserts that "sales representatives" are categorized by the group of health care providers to whom they sell particular groupings of products, such as products marketed to primary care physicians, hospital-marketed products, and products marketed to specialists. Declaration of Craig Mangean in Support of DSI's Mot. to Transfer, at ¶ 6. According to DSI, its "sales professional tiered position categories" include: "Sales Representative," "Sales Representative II," "Sales Specialist," "Senior Sales Specialist," "Senior Sales Professional," "CV Specialty Sales Representative," "Senior CV Specialty Sales Representative," "Hospital Representative," "Senior Hospital Sales Representative," and "Hospital Sales Specialist." Id.

From December 2006 through March 2011, DSI has employed at least 206 "sales representatives" in California. Id. at ¶ 9. Of these employees, 107 have resided in the Central District of California. Id. During that same time, forty-four sales representatives have resided in the Northern District of California. Id. The sales representatives are supervised by district managers. As of March 2011, nine of the twenty district managers charged with supervising California sales representatives are located in the Central District. Id. at ¶ 10. Substantially more district managers reside in the Central District than in any other district in California. Id.

The Daiichi Sankyo Administrative and Corporate Division[2] is headquartered in New Jersey, and the DSI Human Resources department charged with supporting DSI sales operations is also located in that state. Id. at ¶¶ 2, 11. The DSI Vice President responsible for overseeing the department lives in New Jersey. Id. at ¶ 5.

The Human Resources department includes managers and staff members who are personally familiar with the job duties, positions and procedures applicable to Lucas and the putative class members. Id. at 11. Payroll records and files, official personnel files, position description questionnaires, job descriptions, promotional materials, policies and procedures (including those relating to

---

[2] The record does not further explain the relationship between this Division and DSI.

3

employment, not limited to compensation, overtime, compliance, and product samples), compensation records, incentive compensation plans, training materials, benefit plans and other documents applicable to Lucas and putative class members are all located in New Jersey. Id. at 13.

DSI does not maintain any office space for employees, such as sales representatives, in California. Id. at 8. The sales representatives primarily rely on laptop computers and home offices. Id. Their job duties entail analyzing information regarding prescription-writing habits of key physicians on their call lists and visiting the offices of these physicians. Id. Lucas worked as a primary care sales representative in the Palm Springs area from July 2008 through November 2010. Id. at 12. Lucas's counsel, except for one attorney located in New York, and DSI's counsel are located in the Central District.

## LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988). Factors the court may consider include (1) the plaintiff's choice

of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) relative ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. Saleh v. Titan Corp., 361 F. Supp. 1152, 1156 (N.D. Cal. 2005) (citing Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000), and Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)).

The movant bears the burden of justifying the transfer by a strong showing of inconvenience. Decker Coal, 805 F.2d at 843. The motion may be denied if the increased convenience to one party is offset by the added inconvenience to the other party. Id. As a general rule, the plaintiff's choice of forum is given significant weight and will not be disturbed unless other factors weigh substantially in favor of transfer. See 28 U.S.C. § 1404(a). However, the plaintiff's selection of forum has minimal value where the plaintiff is not a resident of the judicial district in which the suit commenced. Armstrong v. Home Depot U.S.A., Inc., 1996 WL 382895, *1 (N.D. Cal.) (citing Grubs v. Consolidated Freightways, Inc., 189 F. Supp. 404, 409 (D. Mont. 1960) and Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)). In addition, when the plaintiff represents a

class, its choice of forum is given less weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).

DISCUSSION

The parties do not dispute that this action could have been brought in the Central District of California. DSI concedes that the Northern District and Central District of California are equally familiar with the law applicable to this action, and makes no argument that relative court congestion in the Northern District or the potential consolidation of claims favors transferring this action to the Central District. However, DSI argues that the remaining factors, primarily related to the issue of convenience, support transferring the case to the Central District.

DSI's central contention is that Lucas and a majority of sales representatives reside in the Central District and, thus, venue in that district is more convenient for the parties and witnesses, and serves to ease access to evidence. DSI contends that most witnesses relevant to Lucas's individual claim that he was misclassified as exempt are in the Palm Springs area, and because most putative class members are in the Central District, the relevant witnesses are predominantly located there as well. In addition, DSI asserts that documents related to Lucas's and most putative class members' claims are primarily located in either the Central District or New Jersey. Finally, DSI argues that the Central District has a stronger interest in the

6

controversy because a majority of the putative class members reside in that district.

Lucas's choice of forum in this action is entitled to reduced deference because he seeks to represent a class, Lou, 834 F.2d at 739, and he has filed his complaint in a district outside of the district in which he is domiciled, Forrand v. Fed. Express Corp., 2008 U.S. Dist. LEXIS 10858, *7 (N.D. Cal.) (holding that deference owed to a nonresident plaintiff's choice of forum is "substantially reduced."). The relative convenience of hearing this case in the Central District compared to the Northern District favors granting DSI's motion to transfer venue.

First, DSI asserts that venue in the Central District is most convenient for the parties. DSI points to records indicating that fifty-two percent of its California sales representatives reside in the Central District, while approximately twenty-one percent reside in the Northern District and the remainder reside in the Southern and Eastern Districts. In contrast to Adoma v. University of Phoenix, Inc., a more significant number of putative class members in this case reside in the Central District compared to the Northern District. 711 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010) (holding that, where forty percent of potential class members were residing in the Eastern District compared to sixty percent in the Central District, transfer of venue to the Central District was not warranted). Furthermore, it is not clear in Adoma whether the named plaintiff lived in or outside of the

7

Eastern District, where the suit was filed, and the court did not consider that factor in deciding to deny the motion to transfer. Nor did the Adoma court consider where the parties' counsel were located. Here, however, it is undisputed that Lucas lives in the Central District, and his and DSI's counsel, except for one attorney located in New York, are also based in that district. DSI argues that litigating the case in the district in which Lucas and counsel for parties are located will be substantially more convenient. Accordingly, DSI has made a strong showing that the Central District is a more convenient venue for the parties.

As a second factor, the Court considers whether hearing the case in the Central District will be more convenient for the witnesses in this action. Many of the witnesses most relevant to resolving Lucas's complaint are based in DSI's Human Resources department. Personnel in this department are likely the most familiar with Lucas's and putative class members' job responsibilities, as well as DSI's work schedule policies, timekeeping and payroll procedures and practices. Because the Human Resources department personnel are located in New Jersey, the convenience of these witnesses favors neither the Northern District nor the Central District. However, substantially more district managers reside in the Central District than in any other district in California. District managers supervise putative class members, and are likely to know about their work schedules and responsibilities. Although inconvenience to witnesses who are

employed by a party and may be compelled to testify may be discounted, STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988), it is nonetheless of some relevance. The convenience of the witnesses supports transferring this case to the Central District.

Third, access to proof, apart from the witnesses' and parties' testimony, adds some support to transferring this case to the Central District. DSI admits that documentary evidence, such as payroll records and other files, is stored in New Jersey. Thus, neither the Northern District nor the Central District provides any comparative advantage in accessing those documents. However, because Lucas and most putative class members reside in the Central District, evidence they possess is more conveniently accessed in the Central District, although modern technology likely minimizes the expense or inconvenience of transporting such evidence. Accordingly, access to proof slightly favors transferring this action to the Central District.

Finally, DSI argues that the interests of justice are served by transferring this case to the Central District. While the Northern District's interest in the action is not insubstantial, it appears that the Central District has a greater interest in the case because Lucas and most putative class members live there. Moreover, the fact that Lucas does not reside in the Northern District, the vast majority of putative class members reside outside of this district and the parties' counsel are in Southern

9

California evidence forum-shopping by Lucas.  Evidence of forum-shopping by a plaintiff supports a defendant's motion to transfer venue.  See e.g., Forrand, 2008 U.S. Dist. LEXIS 10858, *7-11.

Lucas's choice of forum is entitled to little deference.  DSI has made a strong showing that convenience and the interest of justice favor transferring this action to the Central District.

CONCLUSION

DSI's motion to transfer this action to the Central District is GRANTED.  Docket No. 10.  The case management conference currently scheduled for June 14, 2011 is VACATED.

IT IS SO ORDERED.

Dated: 5/24/2011

CLAUDIA WILKEN
United States District Judge